UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPRINT SPECTRUM REALTY COMPANY, LLC,<br><br>Plaintiff<br><br>v.<br><br>WILLIAM F. HARTKOPF, JR.,<br><br>Defendant. | Case No. 19-cv-03099-JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR CONCEALMENT**<br><br>Re: Dkt. No. 28 |

Sprint Spectrum Realty Company, LLC ("Sprint") sues William F. Hartkopf, Jr. seeking declaratory judgment and other relief for breach of contract and breach of good faith and fair dealing arising out of a lease of real property owned by Mr. Hartkopf. (Dkt. No. 1.)[1] Mr. Hartkopf brings counterclaims against Sprint seeking declaratory judgment and other relief for breach of contract, breach of good faith and fair dealing, unjust enrichment, and concealment. (Dkt. No. 27.) Now before the Court is Sprint's motion to dismiss Mr. Hartkopf's amended counterclaim for concealment pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (Dkt. No. 28.) After careful consideration of the parties' briefing and having had the benefit of oral argument on November 21, 2019, the Court GRANTS Sprint's motion. Mr. Hartkopf fails to plead facts that plausibly suggest that Sprint concealed the material fact at issue.

//

//

//

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 5 & 15.)

**BACKGROUND**

**I. Counterclaim Allegations**

The gravamen of Mr. Hartkopf's concealment counterclaim is that Sprint did not disclose that its communications equipment, which Sprint installed on the roof of a building owned by Mr. Hartkopf pursuant to a lease agreement between the parties, occupied more than 300 square feet of the subject property.

**A. The Agreement**

Mr. Hartkopf owns a building located in Fremont, California (the "Property"). (Dkt. No. 27 at ¶ 8.) In August 1997, Mr. Hartkopf and Sprint entered into a "PCS Site Agreement" (the "Agreement"), as landlord and tenant, respectively. (*Id.* at ¶ 9.) Pursuant to the Agreement, Mr. Hartkopf leased to Sprint certain space on the Property's roof (the "Site") for $1,300.00 per month "for the purpose of installing, removing, replacing, maintaining[,] and operating a personal communications service systems family" (the "Facility"). (*Id.* at ¶ 10; *see also* Dkt. No. 27, Ex. A at 13 ¶ 3.) The Site consists of: (1) "[b]uilding exterior space for attachment of antennas"; (2) "[b]uilding exterior space for placement of base station equipment"; and (3) "[s]pace required for cable runs." (Dkt. No. 27, Ex. A at 13 ¶ 1.)

The Agreement's description of the Site states that it consists of:

> Space on the exterior of the [Property] . . . for at least three [ ] sectors of antennas as depicted in Exhibit A-2; approximately 300 square feet, measuring approximately on the rooftop of the [Property] for Sprint Spectrum's equipment as depicted in Exhibit A-2; space for utility runs connecting Sprint Spectrum's equipment with the nearest available utility services; space for coaxial cables connecting Sprint Spectrum's equipment and the antennas; and, access to the antennas, Sprint Spectrum's equipment, utility runs and coaxial cables.

(*Id.* at 14.) Mr. Hartkopf agreed to the terms of the Agreement "with the express understanding that the space being leased to Sprint consisted of 300 square feet for all of Sprint's equipment." (Dkt. No. 27 at ¶ 14.) Sprint has at all times relevant to the instant action, however, known "that the equipment it planned to install required more than the 300 square feet identified in the [Agreement]," and has failed to disclose that fact to Mr. Hartkopf. (*Id.* at ¶ 15.)

//

**B.     The 2011 Amendment and Subsequent Modifications**

In December 2011, the parties entered into "Amendment No. One" to the Agreement ("2011 Amendment" or "Amendment"). (*Id.* at ¶ 18; *see also* Dkt. No. 1-2, Ex. B at 2-8.)[3] The Amendment modified the Agreement only to the extent it "permitted Sprint to conduct necessary work to prepare, maintain[,] and alter the Site to install or otherwise modify [certain] [i]mprovements." (Dkt. No. 27 at ¶¶ 19-20.) As consideration for the modifications, "the Amendment increased the monthly rent by $200.00." (*Id.* at ¶ 21.) However, the Amendment did not increase the size of the Site set forth in the Agreement and Mr. Hartkopf agreed to the Amendment with that understanding. (*Id.* at ¶¶ 22-23.) Nor have the parties executed any subsequent amendments that provide Sprint with more space than originally agreed upon. (*Id.* at ¶ 24.)

Subsequent to the 2011 Amendment, Mr. Hartkopf agreed to allow "Sprint to make physical modifications to the Site," upon Sprint's request and pursuant to the terms of the Agreement. (*Id.* at ¶¶ 25-26.) "Sprint affirmed and represented in numerous correspondences with [Mr.] Hartkopf that any modifications or improvements at the Site would not increase Sprint's lease space" set forth in the Agreement. (*Id.* at ¶ 27.) Sprint knew, however, that its requested modifications and improvements "required more than . . . 300 square feet" and did not disclose that fact to Mr. Hartkopf. (*Id.* at ¶¶ 28-29.)

**C.     Notice of Default**

In early April 2019, Mr. Hartkopf discovered "an article detailing the deceptive practices

---

[3] Under the incorporation-by-reference doctrine, courts may consider on a Rule 12(b)(6) motion to dismiss "evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the [document's] authenticity." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (internal quotation marks and citation omitted). Here, Mr. Hartkopf's amended counterclaim references the 2011 Amendment, (*see* Dkt. No. 27 at ¶¶ 18-24), but does not attach it to the counterclaim. The Amendment is attached, however, to Sprint's underlying complaint and Mr. Hartkopf's opposition to the instant motion references that attachment and does not dispute its authenticity. (*See* Dkt. Nos. 1-2, Ex. B & 29 at 10-11.) The Court will therefore consider the Amendment because it is incorporated by reference in Mr. Hartkopf's amended counterclaim. Likewise, Mr. Hartkopf's amended counterclaim references the "Note of Default" attached to the underlying complaint, (*see* Dkt. No. 27 at ¶¶ 32-35 (discussing correspondence contained in Dkt. No. 1-3, Ex. 3 at 2-7)), and is thus incorporated by reference.

employed by lessees of cell tower leases." (*Id.* at ¶ 32.) "On or about April 15, 2019, [Mr.] Hartkopf went on the roof of the Property to measure the space occupied by Sprint's equipment and discovered that Sprint was using in excess of 300 square feet." (*Id.* at ¶ 33.) Mr. Hartkopf notified Sprint by mail three weeks later that it was not in compliance with the Agreement and owed back rent for the additional space. (*Id.* at ¶ 34-35; *see also* Dkt. No. 1-3, Ex. 3 at 2-7.) Sprint responded to Mr. Hartkopf's letter and denied his allegations. (Dkt. No. 27 at ¶ 36.) In June 2019, Mr. Hartkopf retained Total Telco Specialists ("Telco") "to perform a roof survey and to measure the roof space being used by Sprint." (*Id.* at ¶ 38.) Telco's measurements confirmed Mr. Hartkopf's April 2019 finding that Sprint was occupying more than 300 square feet of the Site; further, the overage was greater than Mr. Hartkopf initially thought. (*Id.*) Mr. Hartkopf revised his calculation of back rent accordingly. (*Id.*)

## II. Procedural History

Sprint filed the underlying complaint in this action on June 4, 2019, asserting claims for "declaratory judgment," "breach of contract," "breach of good faith and fair dealing," and "specific performance." (Dkt. No. 1 at 10-13.) In August 2019, Mr. Hartkopf filed counterclaims for "declaratory judgment," "breach of contract," "breach of implied covenant of good faith and fair dealing," and "unjust enrichment." (Dkt. No. 20 at 4-7.) The following month Mr. Hartkopf filed amended counterclaims that added a claim for "concealment." (*See* Dkt. No. 27 at 8-9.) Sprint filed the instant motion to dismiss the concealment counterclaim thereafter. (Dkt. No. 28.) The motion is fully briefed, (*see* Dkt. Nos. 29 & 30), and the Court heard oral argument on November 21, 2019.

**DISCUSSION**

The elements of a claim for fraudulent concealment are: "(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594,

606 (2014); *see also Johnson v. Mitsubishi Dig. Elecs. Am., Inc.*, 578 F. Supp. 2d 1229, 1239 (C.D. Cal. 2008) (same).

Fraud claims are subject to the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In general, a plaintiff alleging fraudulent conduct must include the "who, what, when, where, and how" of the fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). However, "a fraud by omission or fraud by concealment claim can succeed without the same level of specificity required by a normal fraud claim" because a plaintiff in such cases "is alleging a failure to act instead of an affirmative act," and thus "cannot point out the specific moment when the defendant failed to act." *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) (citing *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007) (noting that a "fraud by omission claim will not be dismissed purely for failure to precisely state the time and place of the fraudulent conduct"); *see also Erickson v. Boston Scientific Corp.*, 846 F. Supp. 2d 1085, 1093 (C.D. Cal. 2011) ("To plead the existence of an omission sufficient to support a fraudulent concealment claim, a plaintiff must describe the content of the omission and where the omitted information should or could have been revealed.") (internal quotation marks and citation omitted). Ultimately, "[a] pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Sprint moves to dismiss Mr. Hartkopf's counterclaim for concealment on four independent grounds: (1) the allegations fail to satisfy the heightened pleading standards for fraud claims under Federal Rule of Civil Procedure 9(b); (2) the alleged material fact was not concealed; (3) Sprint had no duty to disclose; and (4) the claim is time-barred by the applicable statute of limitations. The Court addresses Sprint's first two arguments and concludes that dismissal is warranted because Mr. Hartkopf fails to plead facts that plausibly support an inference that Sprint concealed the total square footage it occupied at the Site.

//

## I. The Allegations Satisfy Rule 9(b)

Sprint first argues that Mr. Hartkopf's allegations of concealment are "vague and insufficient under 9(b)'s heightened pleading standard" because he "fails to identify who on behalf of Sprint made representations regarding the Facility's aggregate square footage, what the substance of these representations were, and when or where such representations were made." (Dkt. No. 28 at 7.) The Court disagrees.

Mr. Hartkopf alleges that the terms of the Agreement limit the Site "to approximately 300 square feet for Sprint equipment" but that Sprint knew at the outset that the Facility required more than 300 square feet of space. (*See* Dkt. No. 27 at ¶¶ 13, 15, 62.) Mr. Hartkopf also alleges that Sprint was "in exclusive possession of said facts" at all times relevant to the counterclaim. (*Id.* at ¶ 63.) Further, "Sprint continued its failure to disclose said facts to [Mr.] Hartkopf with the intention of inducing [him] to agree to the requested modifications or improvements [in the 2011 Amendment]." (*Id.* at ¶ 65.)

Thus, Mr. Hartkopf has sufficiently "describe[d] the content of the omission and where the omitted information should or could have been revealed," *see Erickson*, 846 F. Supp. 2d at 1093; specifically, Sprint allegedly failed to disclose in the Agreement that the Facility would require more than 300 square feet and did not disclose that fact in communications with Mr. Hartkopf concerning subsequent modifications or improvements at the Site. Those allegations satisfy the Rule 9(b) standard by describing the circumstances of the alleged concealment, such that Sprint "can prepare an adequate answer from the allegations." *See Moore*, 885 F.2d at 540. Accordingly, the Court denies Sprint's motion to the extent it asserts that the concealment counterclaim fails to satisfy Rule 9(b).

## II. Intentional Concealment of Material Fact

Sprint next argues that the "counterclaim demonstrates that Sprint did not actively conceal information concerning the square footage of the Facility at the Site." (Dkt. No. 28 at 7.) Sprint asserts that Mr. Hartkopf fails to plead active concealment for two reasons: (1) Mr. Hartkopf "had possession of the property and was capable of inspecting the aggregate square footage used by Sprint's Facility at any point over the past twenty-one years"; and (2) the Agreement and

6

Amendment "included 'sketches' of the Site that included drawings regarding the different components of the Facility that Sprint installed on the Site." (*Id.* at 7-8.) Because the Court concludes that the first argument is dispositive, it need not address the disputed "sketches."[4]

Accepting the counterclaim's allegations as true and drawing all inferences in Mr. Hartkopf's favor, Mr. Hartkopf fails to plead a plausible claim for fraudulent concealment because there are no factual allegations that plausibly support an inference that Sprint engaged in conduct intended to conceal that it was using more than 300 square feet at the Site. Mr. Hartkopf's allegations that in April 2019 he "went on the roof of the Property to measure the space occupied by Sprint's equipment and discovered that Sprint was using in excess of 300 square feet," (*see* Dkt. No. 27 at ¶ 33), and retained Telco in June 2019 "to perform a roof survey and to measure the roof space being used by Sprint," (*id.* at ¶ 38), support a plausible inference that Sprint did nothing to *conceal* or *suppress* the actual square footage occupied by its equipment. In other words, Mr. Hartkopf discovered the approximate true square footage as soon as he made the effort to look. Such circumstances do not amount to concealment.

Mr. Hartkopf counters that he did not have "unfettered access to the Site" because the Agreement required him "to warrant that he would not have unsupervised access to the Site or to Sprint's equipment." (Dkt. No. 29 at 11 (citing Dkt. No. 1-1, Ex. 1 at 2 ¶ 4 (providing, in pertinent part, "that Owner shall not have unsupervised access to the Site or to the PCS Equipment")).) The Agreement did not, however, bar Mr. Hartkopf from accessing the entirety of the *roof* which he alleges he did on two occasions. Given that Mr. Hartkopf had access to the roof on which the Site was located—indeed, it is Mr. Hartkopf's roof—Mr. Hartkopf's allegations support a more plausible inference that Sprint could not conceal the amount of space the Facility

---

[4] Mr. Hartkopf disputes the authenticity of the sketch included with the Agreement that is attached to Sprint's underlying complaint. (Dkt. No. 29 at 9 (disputing the authenticity of Dkt. No. 1-1, Ex. 1 at 7-8 and asserting that the "referenced 'sketch' . . . was not part of the agreement").) However, Mr. Hartkopf does not dispute the authenticity of the "Equipment Layout Plans" included with the 2011 Amendment that are attached to Sprint's underlying complaint. (*See* Dkt. No. 1-2, Ex. 2 at 6-7.) As previously discussed, Mr. Hartkopf's counterclaim incorporates the Amendment by reference. That said, adopting Sprint's interpretation of the Amendment's Equipment Layout Plans, which on their face do not appear to include the total square footage Sprint occupied at the Site, is contrary to the standard of review at this stage.

7

used in relation to the total square footage of the roof itself. In other words, the material fact allegedly concealed was also—as alleged—readily available to Mr. Hartkopf. *See Clayton v. Landsing Pac. Fund, Inc.*, No. C 01-03110 WHA, 2002 WL 1058247, at *7 (N.D. Cal. May 9, 2002) (dismissing fraudulent concealment claim where the allegedly concealed "information was in full view; plaintiff just [overlooked] it until years later").

Mr. Hartkopf's opposition recognizes in a footnote that the Site is located on the roof of his building, but he asserts that "the roof is accessible only through a wall-mounted metal ladder, adjacent to which is posted a sign warning individuals to 'stay back' due to radio frequency energy emissions that exceed exposure limits." (Dkt. No. 29 at 11 n.4.) Further, Mr. Hartkopf contends that he saw "similar signs posted on the roof itself, which caused him to exit quickly once he saw them." (*Id.*) Those facts are not alleged in the complaint, and even if they were, that Sprint posted the signs does not give rise to a reasonable inference that the signs were intended to conceal the equipment size from Mr. Hartkopf, *see Graham*, 226 Cal. App. 4th at 606 (to prevail on a claim of fraudulent concealment, the plaintiff must prove the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact); instead, the more plausible inference is that Sprint posted the signs to warn of energy emissions produced by its equipment. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief") (internal quotation marks and citation omitted).

Mr. Hartkopf further argues that he "never had any cause to go up to the Site and inspect [Sprint's] equipment" until he read the article in April 2019 because Sprint allegedly "affirmed and represented in numerous correspondences with [him] that any modifications or improvements would not increase Sprint's lease space as originally agreed upon in the . . . Agreement." (*Id.* at 11.) But as Mr. Hartkopf clarified at oral argument, he does not allege that the modifications or improvements increased Sprint's lease space; he alleges that the original installation exceeded the agreed-to limitation. Further, as alleged, Mr. Hartkopf had access to the roof and could have determined the square footage used by Sprint at any time over the last two decades. That he had no cause to do so before April 2019 does not give rise to a reasonable inference that Sprint

8

1 engaged in fraudulent concealment because there are no allegations that Sprint ever acted to
2 conceal the square footage. *See Johnson*, 578 F. Supp. 2d at 1239 (noting that a claim for
3 fraudulent concealment will not lie "when it cannot be shown that defendants acted to conceal
4 information").

Mr. Hartkopf has failed to plausibly allege that Sprint intentionally concealed the amount of space its equipment occupied for a another reason: Sprint's underlying complaint alleges that the Agreement does *not* limit the Site to 300 square feet.[5] In other words, and as Sprint asserts, Mr. Hartkopf "ignores Sprint's position in this case that it *did* disclose to [Mr. Hartkopf]" in the Agreement that the Facility required more than 300 square feet of space. (*See* Dkt. No. 30 at 7 (emphasis added).) To plausibly plead that Sprint intentionally concealed that it was using more space than the parties agreed to, Mr. Hartkopf must plausibly plead facts that give rise to an inference that Sprint shared Mr. Hartkopf's interpretation of the Agreement when it allegedly concealed its purported breach from him. Mr. Hartkopf does not allege a single fact to support such an inference. The Agreement itself cannot support that inference because its interpretation is not so clear that the Court can infer that Sprint had to have known that the Agreement means what Mr. Hartkopf presently asserts.

Mr. Hartkopf's reliance on *Warner Constr. Corp. v. City of Los Angeles* is unavailing because there the California Supreme Court found—upon review of the trial court's award of damages following a jury trial—that "[t]he facts concealed were exclusively available to [the] defendant" and "the plaintiff presented evidence of intentional concealment by the [defendant]." *See* 2 Cal. 3d 285, 295 (1970). Similar facts are not alleged here because the fact allegedly concealed—the total square footage of space Sprint occupied on the roof—was not exclusively available to Sprint. Nor do the counterclaim's allegations give rise to a reasonable inference of intentional concealment.

---

[5] Sprint's underlying complaint in this action alleges that pursuant to the Agreement, "Sprint has the right, among other things, to occupy four separate spaces on the Site: (1) 300 square feet on the rooftop of the building for Sprint's Base Station Equipment; (2) space for the Cable Trays; (3) space for the sectors of Antennae Arrays; and (4) space for the Utility Runs." (Dkt. No. 1 at ¶ 26.) In other words, Sprint alleges that the Agreement does not limit the Site to 300 square feet.

9

Accordingly, the Court grants Sprint's motion to dismiss on the grounds that Mr. Hartkopf fails to plead facts that plausibly support an inference that Sprint intentionally concealed the total square footage it occupied at the Site. The Court declines to consider Sprint's other arguments in light of this holding.

## CONCLUSION

The Court GRANTS Sprint's motion to dismiss Mr. Hartkopf's counterclaim for fraudulent concealment because Mr. Hartkopf fails to plead facts that plausibly support an inference that Sprint concealed the total square footage it occupied at the Site. In light of the undisputed fact that Mr. Hartkopf had access to his roof, the Court doubts that the deficiencies in the fraudulent concealment claim can be cured. Nonetheless, the Court will give Mr. Hartkopf 21 days to file an amended fraudulent concealment claim, provided he can do so consistent with Federal Rule of Civil Procedure 11.

The Court does not grant Mr. Hartkopf leave to add any other claims. At oral argument and in his opposition, Mr. Hartkopf did not identify any alleged misrepresentations that were made to him. Thus, if Mr. Hartkopf wishes to bring a different tort counterclaim, he must first move for leave to amend.

This Order disposes of Docket No. 28.

**IT IS SO ORDERED.**

Dated: November 22, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge