UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPRINT SPECTRUM REALTY COMPANY, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>WILLIAM F. HARTKOPF, JR.,<br><br>  Defendant. | Case No. 19-cv-03099-JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION TO EXCLUDE EXPERT OPINION TESTIMONY**<br><br>Re: Dkt. No. 90 |

Plaintiff brings claims for declaratory judgment, breach of contract, breach of good faith and fair dealing and for specific performance against Defendant.[1] (*See* Dkt. No. 84.)[2] Defendant brings counterclaims for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. (*See* Dkt. No. 83.) Defendant, as landlord, and Plaintiff, as tenant, entered into a Personal Communication Services Site Agreement (the "Site Agreement" or "Agreement") under which Defendant leased space on his roof to Plaintiff for the purpose of installing and operating a personal communication services site. (Dkt. No. 84 at 5 ¶ 20.) The parties dispute whether the Site Agreement authorized Plaintiff to occupy over 300 square feet of Defendant's roof and whether Plaintiff's occupation of more than 300 square feet of Defendant's roof violates the Site Agreement. In connection with summary judgment and in preparation for trial, Plaintiff filed the instant motion to exclude Defendant's expert testimony under the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579

---

[1] Plaintiff sues Defendant in his individual capacity and in his capacity as Trustee of the William Francis Hartkopf, Jr. Declaration of Trust dated March 9, 2007. (Dkt. No. 84 at 2 ¶ 5.) This Order refers to Mr. Hartkopf in both capacities as "Defendant." All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. 636(c). (Dkt. Nos. 5 & 15.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1   (1993). After careful consideration of the parties' briefing, the Court determines that oral
2   argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and DENIES Plaintiff's motion. The
3   testimony of Defendant's expert is admissible.

## BACKGROUND

Plaintiff provides wireless and personal communication services to its customers in the San Francisco Bay Area. Defendant owns real property throughout the Bay Area, including the property at issue in this action located in Fremont, California. After conducting a selection process for the location of its next personal communication service system site, Plaintiff determined that Defendant's property satisfied its criteria to provide "reliable wireless services" throughout Fremont and other areas in Plaintiff's "search ring." (Dkt. No. 84 at 4-5 ¶¶ 18-19.)

On or about August 10, 1997, Plaintiff as tenant and Defendant as landlord entered into the Site Agreement. (Dkt. Nos. 84 at 5 ¶ 20, 83 at 4 ¶ 9.) Under the Site Agreement, Plaintiff leased space on the roof of Defendant's property to install and operate its personal communication service system site. Following the Agreement's execution, Plaintiff submitted a building application to the City of Fremont for the purpose of installing its systems site on Defendant's roof that the City subsequently approved. (Dkt. No. 84 at 5 ¶ 21.) Following its approval, Plaintiff installed equipment and components at the site. The parties amended the Agreement in or around December 5, 2011 to allow Plaintiff to install and modify certain site components, and increased Plaintiff's rent for use of the roof's space. (Dkt. No. 83 at 5 ¶¶ 18-20, 84 at 7 ¶ 35, 39.)

Plaintiff contends that at all relevant times it has paid rent in accordance with the Agreement's terms and the December 5, 2011 amendment, and that the Agreement permits Plaintiff to occupy 300 square feet of the roof for its base station equipment in addition to 3 other spaces for additional items and equipment. Defendant argues that the Agreement limits the leased space to 300 square feet, and that Plaintiff's occupation of additional roof space is in breach of the Site Agreement.

The parties do not dispute that Plaintiff's rooftop installation occupies more than 300 square feet of space; instead, this action concerns the parties' differing interpretations of the Site Agreement. A jury trial is scheduled for October 8, 2021.

**LEGAL STANDARD**

Under Federal Rule of Evidence 702, a witness may offer expert testimony if the following requirements are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. These criteria can be distilled to two overarching considerations: "reliability and relevance." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir.2011). The inquiry does not, however, "require a court to admit or exclude evidence based on its persuasiveness." *Id*.

Scientific evidence is reliable "if the principles and methodology used by an expert are grounded in the methods of science." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003). The court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595 (1993). The court's "task . . . is to analyze not what the experts say, but what basis they have for saying it." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert II*").

In deciding whether to permit an expert to testify, courts face the difficult task of "determin[ing] whether the analysis undergirding the experts' testimony falls within the range of accepted standards governing how scientists conduct their research and reach their conclusions." *Daubert II*, 43 F.3d at 1317. Among the factors courts consider in making this determination are: (1) whether the expert's theory or method is generally accepted in the scientific community; (2) whether the expert's methodology can be or has been tested; (3) the known or potential error rate of the technique; and (4) whether the method has been subjected to peer review and publication. *Id*. at 1316 (citing *Daubert*, 509 U.S. at 593-94). Consideration should also be given to whether the expert's testimony springs from research independent of the litigation. *See id*. at 1317. If not, the expert should point to other indicia of reliability, such as peer-reviewed studies or a reputable

source showing that the expert "followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field." *Id*. at 1317-19. "These factors are illustrative, and they are not all applicable in each case." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1233 (9th Cir. 2017). The inquiry is "flexible," *Daubert*, 509 U.S. at 594, and "Rule 702 should be applied with a 'liberal thrust' favoring admission," *Messick*, 747 F.3d at 1196 (quoting *Daubert*, 509 U.S. at 588).

**DISCUSSION**

Plaintiff moves to exclude the expert report and deposition testimony of Defendant's expert Neil K. Shirk.

Mr. Shirk is a radio frequency engineer with over 30 years' engineering experience and a "lengthy background in [radio frequency] systems[.]" (Dkt. Nos. 90-1 at 8, 92-3 at 9.)  He was retained by Defendant to investigate and analyze "the functional operation, performance, and configurations of various electrical and electronic equipment installed on the rooftop in-question and the space they required and occupied." (Dkt. No. 90-1 at 7.)

Plaintiff moves to exclude Mr. Shirk's expert report and deposition testimony because they are "immaterial to a lease dispute and the square footage" at issue in the action. (Dkt. No. 90 at 3.) (emphasis removed.)  Plaintiffs contend that Mr. Shirk's opinions should be excluded because he has not reviewed the Site Agreement or visited the site, that his expert report is based on the irrelevant and "unrelated" square footage of radio frequency setbacks, and that his opinions are not based on "sufficiently reliable facts and data." (*Id.*) (emphasis removed.)  Given this, Plaintiff insists that Federal Rule of Evidence 702 requires the exclusion of Mr. Shirk's expert report and deposition testimony.  The Court disagrees.

**A. Relevance**

Mr. Shirk's testimony and report are relevant because Mr. Shirk provides "calculations of how much space [Plaintiff] was using on the [site] at discrete points in time[.]" (Dkt. No. 92 at 10.)  While the parties do not dispute that Plaintiff has at all relevant times occupied more than 300 square feet of Defendant's roof, they dispute exactly how much space over the 300 square feet Plaintiff has occupied or is currently occupying on Defendant's roof.  Therefore, contrary to

4

Plaintiff's argument that Mr. Shirk's opinions are not relevant because they do not consider the Site Agreement's specific terms or concern an interpretation of the Site Agreement, Mr. Shirk's opinions speak to a factual dispute between the parties. (*See, e.g.*, Dkt. Nos. 90-1 at 23-25, 92-3 at 11.) *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591-92. Plaintiff argues that Mr. Shirk's opinions regarding radio frequency setbacks are irrelevant because the Site Agreement contains "no discussion as to [radio frequency] setbacks" and this action does not concern safety requirements. (Dkt. No. 90 at 5.) Not so. Mr. Shirk's opinions regarding radio frequency setback concern the space Plaintiff's equipment occupies in light of radio frequency setback regulations, and thus relate to his calculation of the total square feet Plaintiff occupied on Defendant's roof. (Dkt. No. 90-1 at 23.) Plaintiff's attempt to discredit Mr. Shirk's opinions because he is not qualified to testify on lease agreements also fails. Defendant retained Mr. Shirk in his capacity as an engineer and engineering expert. His opinions and expertise are relevant to the factual issue of how much space Plaintiff's equipment occupied on Defendant's roof. *See Daubert*, 509 U.S. at 592.

### B. Reliability

Plaintiff argues that Mr. Shirk's testimony and report are not reliable because he did not visit the site, was not provided adequate information to form his opinions, and that many documents he was given, such as photographs of the site, were devoid of important contextual information. (Dkt. No. 90 at 8-9.) Mr. Shirk reviewed "in excess of 22 drawing packages" in preparing his report and opinions. (Dkt. No. 92-3 at 6.) These depicted "the process of [] the work performed as well as the configuration [of equipment] and how it was changed." (*Id.*) He additionally reviewed photographs of Plaintiff's equipment, as well as numerous reports concerning structural calculations, radio frequency emissions, and reports concerning calculations of "rooftop space utilized by [Plaintiff.]" (Dkt. No. 90-1 at 8-9.) Mr. Shirk testified that the photographs were "glimpse[s] of what [Plaintiff's] hardware looked like" that did not provide installation dates, but that the drawing packages he consulted indicated "when and how much hardware was removed and reinstalled with newer [equipment]." (Dkt. No. 92-3 at 7.) According to Mr. Shirk, he did not rely on the photographs to determine when Plaintiff's hardware was

installed, and that the drawing packages' "300-plus drawings [that] indicated what was changed and why" were the "real key" to his analysis. (*Id.* at 7-8.)

Plaintiff argues that because Mr. Shirk did not visit the site his testimony is unreliable. (Dkt. No. 90 at 7.) The argument is unpersuasive. Mr. Shirk's report and testimony relate to "scientific, technical, and other specialized knowledge," and—despite the fact that he did not visit the roof—his review of the drawing packages and other documents demonstrates that his opinions are more than "unsupported speculation[s] and subjective beliefs" whose exclusion Rule 702 and *Daubert* require. *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001). Plaintiff's argument that Mr. Shirk's opinions should be excluded because he did not consider contradictory material such as the D-Tech report fails for the same reason. The existence of allegedly contradictory material fails to show that his report and evidence were not "grounded in the method of science," *Clausen*, 339 F.3d at 1056, or that the numerous documents he reviewed and analyzed failed to provide a "scientifically valid" basis for his opinions, *Daubert II*, 43 F.3d at 1316 (citing *Daubert*, 509 U.S. at 597). These issues go to the weight a jury might give to Mr. Shirk's testimony, not to its admissibility.

## CONCLUSION

For the reasons set forth above, Mr. Shirk's expert report and deposition testimony are relevant and reliable. *See Ellis*, 657 F.3d at 982. They concern a factual dispute and are grounded in reliable methods of scientific study. Accordingly, Plaintiff's motion to exclude Mr. Shirk's export report and deposition testimony is DENIED.

This Order disposes of Dkt. No. 90.

**IT IS SO ORDERED.**

Dated: March 29, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge