UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPRINT SPECTRUM REALTY COMPANY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM F. HARTKOPF, JR.,<br><br>Defendant. | Case No. 19-cv-03099-JSC<br><br>**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 94 & 95 |

Defendant and counterclaimant William F. Hartkopf, Jr. and Plaintiff and counter defendant Sprint Spectrum Realty Company, LLC ("Sprint") entered into a Personal Communication Services Site Agreement (the "Site Agreement" or "Agreement") under which Mr. Hartkopf leased space on his roof to Sprint for the purpose of installing and operating a personal communication services site (the "PCS Site").[1]  Before the Court are the parties' cross-motions for summary judgment.  Sprint moves for summary judgment on Mr. Hartkopf's claims, and argues it is entitled to summary judgment in its favor on all of its own claims.  (Dkt. No. 94.)[2] Mr. Hartkopf moves for summary judgment on Sprint's claims for breach of contract, the implied covenant of good faith and fair dealing, and for specific performance.  (Dkt. No. 95.)  After carefully considering the parties' briefing, and having had the benefit of oral argument on April 15, 2021, the Court GRANTS Mr. Hartkopf's summary judgment motion on all of Sprint's claims, except the declaratory judgment claim, and GRANTS Sprint's summary judgment motion on its

---

[1] Sprint sues Mr. Hartkopf in his individual capacity and in his capacity as Trustee of the William Francis Hartkopf, Jr. Declaration of Trust dated March 9, 2007.  (Dkt. No. 84 at 2 ¶ 5.)  This Order refers to Mr. Hartkopf in both capacities as "Mr. Hartkopf."  All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. 636(c).  (Dkt. Nos. 5 & 15.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

and Mr. Hartkopf's declaratory judgment claim and Mr. Hartkopf's breach of contract and unjust enrichment claims.  Sprint's motion for summary judgment on its remaining claims is DENIED.  "Equipment" as used in the Site Description of Exhibit A does not include Sprint's antennas, cable, or utility runs.  Further, no reasonable trier of fact could find that Mr. Hartkopf repudiated the Site Agreement.

## FACTUAL BACKGROUND

Sprint provides wireless and personal communication services to its customers in the San Francisco Bay Area.  Mr. Hartkopf owns real property throughout the Bay Area, including the property at issue in this action located in Fremont, California.  After conducting a selection process for the location of its next personal communication service system site, Sprint determined that Mr. Hartkopf's property satisfied its criteria to provide wireless services throughout Fremont and other areas in Sprint's "search ring."  (Dkt. No. 94-2 at 2-3 ¶¶ 11-14, 17.)

On or about August 10, 1997, Sprint as tenant and Mr. Hartkopf as landlord entered into the Site Agreement.  (Dkt. No. 94-2 at 7.)  Under the Site Agreement, Sprint leased space on the roof of Mr. Hartkopf's property to install and operate its PCS Site.  Following the Agreement's execution, Sprint submitted a building application to the City of Fremont for the purpose of installing its system's site on Mr. Hartkopf's roof that the City subsequently approved.  (Dkt. No. 94-2 at 4 ¶¶ 22-24.)  Sprint then installed system components at the PCS Site.  The parties amended the Agreement in or around December 5, 2011 to allow Sprint to install and modify certain site components, and increased Sprint's rent for use of the roof's space.  (Dkt. No. 92-4 at 61-63.)

In 2019, Mr. Hartkopf learned that Sprint was occupying more than 300 square feet for the operation of the PCS Site.  (Dkt. No. 94-1 at 12.)  Following this, he provided Sprint with a Notice of Default (the "Notice"), stating that Sprint was occupying more than the 300 square feet he believe the Agreement allocated for its PCS Site equipment.  (Dkt. No. 94-2 at 38.)  In the Notice, Mr. Hartkopf also provided Sprint with calculations regarding the back rent he believed Sprint owed as a result of the excess space it occupied on his roof.  (*Id.* at 38-42.)  On May 24, 2019, after initially threating to cut power to the PCS Site's utilities after Sprint's alleged breach, Mr.

1  Hartkopf sent Sprint an e-mail stating that he would not turn off power to the PCS Site's utilities
2  provided that Sprint responded within a 10-day cure period with justification for its use of "800
3  plus square feet" on the roof. (Dkt. No. 104-2 at 3.) The parties do not dispute that the PCS Site's
4  components together occupy and have at all relevant times occupied more than 300 square feet of
5  space.

## DISCUSSION

The pivotal issue on summary judgment is whether the Site Agreement limits Sprint to utilizing 300 feet of Mr. Hartkopf's roof for all of its components or whether the 300 feet limitation applies only to components other than Sprint's antennas, cable and utility runs. Mr. Hartkopf argues that the Site Agreement limits Sprint to 300 square feet for all of Sprint's system's components on his roof, including cables and antennas as well as the base station equipment. Sprint contends that the Agreement limits only its base station equipment to taking up approximately 300 square feet of roof space.

### I. Interpretation of the Site Agreement

The first paragraph of the Site Agreement reads, in relevant part, as follows:

> 1. Premises and Use. Owner leases to [Sprint] . . ., the site described below:
>
> x Building exterior space for attachment of antennas;
> x Building exterior space for placement of base station equipment;
> x Space required for cable runs to connect PCS equipment and antennas,
>
> in the location(s) ("Site") shown on Exhibit A, together with a non-exclusive easement for access thereto and to the appropriate, in the discretion of [Sprint], source of electric and telephone facilities.

(Dkt. No. 94-2 at 7.) Exhibit A to the Agreement states further:

> Description of [Sprint's] Site and Improvements:
>
> Space on the exterior of the building located at 1051 Mission Blvd. in Fremont, California (hereinafter the "Building") for at least three (3) sectors of antennas as depicted in Exhibit A-2; ***approximately 300 square feet, measuring approximately on the rooftop of the Building for [Sprint's] equipment as depicted in Exhibit A-2***; space for utility runs connecting [Sprint's] equipment with the nearest available utility services; space for coaxial cables connecting [Sprint's] equipment and the antennas; and, access to the antennas, [Sprint's] equipment, utility runs and coaxial cables.

(Dkt. No. 94-2 at 8 (emphasis added.) These provisions unambiguously identify four distinct

3

components to be placed on the roof:
- three sectors of antennas,
- equipment
- space for utility runs to connect the equipment to utilities, and
- cable to connect the equipment and antennas.

As the parties represented during oral argument, it is undisputed that these are the only components Sprint placed on the roof.  (*See also* Dkt. No. 94-2 at 4 ¶ 26.)

Under Exhibit A's plain language, the phrase identifying approximately 300 square feet for Sprint's "equipment" does not include the other three components: antennas, cable or utility runs. Equipment does not mean "antennas" and/or "cables" and/or "utility runs" because antennas and cables and utility runs are specifically identified as something separate and apart from the equipment.  (Dkt. No. 94-2 at 7) (providing that owner agrees to lease to Sprint: (1) exterior space for attachment of antennas; (2) "exterior space for placement of base station equipment"; and (3) "[s]pace required for cable runs to connect PCS equipment and antennas").  Exhibit A's identification of antennas, coaxial cables, and utility runs in distinct clauses separated by semicolons from the clause describing the 300 square feet allocated for Sprint's "equipment[,]" (*id.* at 8), confirms that the "equipment" taking up approximately 300 feet of roof space is distinct from the items identified in the other clauses: antennas, cables and utility runs.  *See Han v. Synergy Homecare Franchising, LLC*, No. 16-CV-03759-KAW, 2017 WL 446881, at *5 (N.D. Cal. Feb. 2, 2017) ("A semicolon is used in a coordinating function between major sentence elements, separating them with more distinctness than a comma." ) (internal quotation marks and citation omitted).  Further, the last phrase of Exhibit A's Site Description provides for "access to the antennas, [Sprint's] equipment, utility runs and coaxial cables" further demonstrating that "equipment" as used in Exhibit A does not include antennas, utility runs or cables.  (Dkt. No. 94-2 at 8.)

Mr. Hartkopf's interpretation of "equipment" in Exhibit A's Site Description as including antennas, or cable or utility runs improperly renders the other clauses of the Site Description surplusage.  *See ACL Technologies, Inc. v. Northbrook Property & Casualty Ins. Co*. 17 Cal. App. 4th 1773, 1785-1786 (1993). If, as Mr. Hartkopf contends, Exhibit A's Site Description means that

the antennas, cables, base station equipment and utility runs together cannot take up more than 300 square feet of roof space, as all are the "equipment" referred to in Exhibit A, then all the other clauses in Exhibit A's Site Description are unnecessary. Exhibit A need not describe separate space "for at least three (3) sectors of antennas as depicted in Exhibit A-2" because that space would be encompassed by the next clause: "approximately 300 square feet measuring approximately on the rooftop of the Building for [Sprint's] equipment as depicted in Exhibit A-2." (Dkt. No. 94-2 at 8.) Exhibit A need not describe separate "space for coaxial cables connecting [Sprint's] equipment and the antennas" because such space would be encompassed by the clause limiting Sprint to 300 square feet for Sprint's equipment. (*Id.*)

The only clause perhaps not surplusage under Mr. Hartkopf's interpretation is the last: space for "access to the antennas, [Sprint's] equipment, utility runs and coaxial cables." (*Id.*.) But this clause, too, shows the fallacy in Mr. Hartkopf's interpretation. If "equipment" means base station equipment, antennas, utility runs and coaxial cables then the last phrase need only say "access to Sprint's equipment." It does not because under Exhibit A's plain language and structure Sprint's "equipment" does not include those components. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other").

Mr. Hartkopf's reliance on Exhibit A-2 of the Agreement in support of his interpretation of "equipment" as including the antennas, cables and utility runs is unpersuasive. Exhibit A-2 contains sketches for the "Description of [Sprint's] Site and Improvements" set forth in Exhibit A. (Dkt. No. 94-2 at 11-13.) As explained above, Exhibit A refers to antennas, cables and utility runs as separate and distinct components from equipment. Thus, when Exhibit A refers to the "equipment" depicted on Exhibit A-2 , it is not referring to the antennas, cables or utility runs depicted on Exhibit A-2.

The Agreement's other references to "equipment" do not change the interpretation of Exhibit A. For example, paragraph 9 provides:

> Interference.  [Sprint] will resolve technical interference problems with other *equipment* located at the Site on the Commencement Date or with any *equipment* that [Sprint] desires to add or attach to the Site

5

> from time to time in its sole discretion. Owner will not permit the installation of any future *equipment* which results in technical interference problems with [Sprint's] then existing equipment.

(Dkt. No. 94-2 at 7 ¶ 9 (emphasis added).) "Equipment" as used in paragraph 9 includes more than Sprint's base station equipment, as otherwise the references to the owner permitting installation of future equipment or other equipment Sprint wants to add would make no sense. The question before the Court, however, is not whether "equipment" in paragraph 9 could include another company's antennas or another company's cables; it is whether "equipment" as used in the Site Description on Exhibit A unambiguously excludes Sprint's antennas, cables and utility runs—the only other components Sprint placed on the roof. Regardless of what "equipment" means elsewhere in the Agreement, the plain language and structure of Exhibit A means that "equipment" as used in Exhibit A does not include Sprint's antennas, cable, and utility runs. To hold otherwise would render most of the Exhibit A Site Description surplusage.

In sum, Section 1 of the Site Agreement and Exhibit A each describe distinct components. It unambiguously provides that Sprint is allocated approximately 300 square feet for its "equipment"—which does not include antennas, coaxial cables, and utility runs. (Dkt. No. 94-2 at 8.) *See Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1125-26 (2008), *as modified on denial of reh'g* (June 4, 2008) ("The interpretation of a contract is a judicial function" and courts may not consider evidence "to vary or contradict the clear and unambiguous terms of a written, integrated contract.") (citations omitted).

## II. Mr. Hartkopf's Claims

Mr. Hartkopf brings claims for breach of contract, declaratory judgment, unjust enrichment, and breach of the implied covenant of good faith and fair dealing against Sprint. Sprint moves for summary judgment in its favor on all of these claims.

### A. Breach of Contract and Breach of Implied Covenant

Mr. Hartkopf's breach of contract claim fails because Sprint has not breached the Site Agreement as a matter of law. As Exhibit A's Site Description providing Sprint with approximately 300 square feet for its equipment does not include the space taken by antennas, utility runs and cables, and as it is undisputed that the only other Sprint component on the roof—

6

the base station equipment—at all times occupied less than 300 square feet, no reasonable trier of fact could find that Sprint breached the Site Agreement. It follows then that Mr. Hartkopf's breach of implied contract claim fails as it is premised on the Site Agreement limiting Sprint to 300 square feet for all of its PCS components. (Dkt. No. 82 at ¶ 54.) Accordingly, summary judgment must be granted in Sprint's favor on Mr. Hartkopf's contract claims.

The Court recognizes that while Sprint's motion for summary judgment argued for the interpretation of the Site Agreement adopted by the Court, it appeared to move for summary judgment on the grounds of Plaintiff not having any proof of damages. It is not clear if this was an alternative argument given that if Sprint's interpretation was adopted the contract claims fail. In any event, to the extent Mr. Hartkopf believes he was not put on fair notice and wishes to file a supplemental opposition addressing the Court's grounds for granting summary judgment on the contract claims, he may file such supplemental brief on or before May 14, 2021. *See* Fed. R. Civ. P. 56(f)(2). Sprint shall not file a further response unless asked by the Court.

**B. Declaratory Judgment**

For the reasons discussed *supra*, Sprint is not in breach of the Site Agreement. Therefore, Sprint is entitled to summary judgment on Mr. Hartkopf's declaratory judgment claim given that he requested a declaratory judgment that Sprint is in breach of the Site Agreement. (Dkt. No. 82 at 6 ¶¶ 39-45.)

**C. Unjust Enrichment**

Regarding Mr. Hartkopf's unjust enrichment claim, the parties' relationship is governed by the Site Agreement. Under California law, "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). The Site Agreement is a binding agreement defining the parties' rights. Therefore, Mr. Hartkopf's unjust enrichment claim fails as a matter of law.

**III. Sprint's Claims**

Sprint brings claims for breach of contract, breach of the implied covenant of good faith and fair dealing, declaratory judgment, and specific performance against Mr. Hartkopf.

7

**A. Breach of Contract**

The gravamen of Sprint's breach of contract claim is that Mr. Hartkopf anticipatorily breached the Site Agreement by requesting back rent and threatening "to interfere with Sprint's operations and reasonable use" of the PCS Site. (Dkt. No. 84 at 12 ¶ 81.) Repudiation of a contract, or "anticipatory breach," occurs "when a party announces an intention not to perform prior to the time due for performance." *Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.*, 231 Cal. App. 4th 1131, 1150 (2014), *as modified on denial of reh'g* (Dec. 17, 2014). Express repudiation is a "clear, positive, unequivocal refusal to perform[.]" *Taylor v. Johnston*, 15 Cal. 3d 130, 137 (1975) (citations omitted). "Anticipatory breach must appear only with the clearest terms of repudiation of the obligation of the contract." *Guerrieri v. Severini*, 51 Cal. 2d 12, 18 (1958) (internal quotation marks and citations omitted). Mr. Hartkopf avers that no reasonable trier of fact could find that his demand for rent and warning regarding power to Sprint's utilities were clear, positive, or unequivocal refusals to perform, and thus no reasonable trier of fact could find that he repudiated the parties' agreement. The Court agrees.

Mr. Hartkopf's Notice "advised [Sprint] that [it was] given notice [Sprint] is not in compliance with the [Site] Agreement." (Dkt. No. 94-2 at 38.) The Notice also stated that Mr. Hartkopf recently discovered Sprint had "miscalculated the roof square footage" between certain dates, and provided amounts for back rent on the basis of those miscalculations. (*Id.* at 38-42.) The Notice informed Sprint that it was not in compliance with the Site Agreement, and provided Mr. Hartkopf's calculations regarding the back rent he believed Sprint owed. (Dkt. No. 94-2 at 38-42.) Mr. Hartkopf concluded the Notice by requesting and inviting Sprint to "prompt[ly] reply[.]" (*Id.* at 43.) Reading the record in the light most favorable to Sprint, *see Tolan v. Cotton*, 572 U.S. 650, 657 (2014), no reasonable trier of fact could find that the Notice contains "clear, positive, and unequivocal refusal[s] to perform." *Taylor*, 15 Cal. 3d at 137.

Sprint's argument that Mr. Hartkopf's May 24, 2019 e-mail and subsequent messages repudiated the Site Agreement is likewise unavailing. Mr. Hartkopf's e-mail contains no information from which a reasonable trier of fact could infer "clear[] terms of repudiation." *Guerrieri*, 51 Cal. 2d at 18. In his e-mail, Mr. Hartkopf asked Sprint to show what language in the

parties' agreements authorized its use of over 800 square feet at the PCS Site. (Dkt. No. 104-2 at 3.) While Mr. Hartkopf stated that he would "hold off" on cutting the power to the PCS Site, "a mere threat alone to abandon is not a repudiation[.]" *Gold Mining & Water Co. v. Swinerton*, 23 Cal. 2d 19, 28 (1943); *see also Moore v. Inv. Properties Corp.*, 71 F.2d 711, 716 (9th Cir. 1934) ("[T]here had been no actual repudiation of the lease; nothing more, in fact, than a mere threat on the part of defendant that he would not be further bound thereby[.]"). Moreover, as Mr. Hartkopf acknowledged in his e-mail, Sprint's 10-day cure period had not yet begun. (Dkt. No. 104-2 at 3.)

Nor could a reasonable trier of fact find that Mr. Hartkopf's request for back rent constitutes the annexation of an unwarranted condition. "Annexing an unwarranted condition to an offer of performance is a refusal to perform" and therefore constitutes repudiation of an agreement. *Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes*, 191 Cal. App. 4th 435, 467 (2010) (internal quotation marks and citations omitted). Pursuant to the Site Agreement, Mr. Hartkopf's argument goes, Sprint was obligated to pay him rent for the use of 300 square feet of space on his roof. The Notice of Default provided Sprint with Mr. Hartkopf's calculations for how much he believed Sprint owed on past rent, and his May 24, 2019 e-mail asked Sprint to justify its use of 800 square feet on his roof. (Dkt. Nos. 104-2 at 3, 94-2 at 38-41.) Neither imposed a new condition on Mr. Hartkopf's continued performance or altered the scope of the parties' agreement. At bottom, Mr. Hartkopf asked Sprint to perform according to his understanding of the Site Agreement: Sprint would pay rent in exchange for his lease of 300 square feet of rooftop space for the entirety of its PCS Site. "Generally, when there is a disagreement as to the meaning of terms in a contract, one party's offer to perform in accordance with his interpretation is not itself an anticipatory breach." *Pac. Coast Eng'g Co. v. Merritt-Chapman & Scott Corp.*, 411 F.2d 889, 894 (9th Cir. 1969) (citation omitted).

Sprint's arguments to the contrary are unavailing. Sprint cites *In re Safakish*, No. 18-50769 MEH, 2018 WL 5621783, at *3 (Bankr. N.D. Cal. Oct. 29, 2018), for the proposition that a party's refusal to perform unless the opposing party consents to additional contractual terms constitutes repudiation. However, the party in *Safakish* "*clearly and unequivocally* informed [another party] that he was cancelling the Settlement Agreement and had no intention to perform

9

unless the terms were renegotiated," and on this basis the court determined that "Safakish expressly repudiated the Settlement Agreement." *In re Safakish*, 2018 WL 5621783, at *3 (emphasis added) (citing *Gold Mining*, 23 Cal. 2d at 28).[3] A reasonable trier of fact could not find that Mr. Hartkopf's conduct rose to this level, and no reasonable trier of fact could find that Mr. Hartkopf stated unequivocally in the e-mail that he would turn off the power if Sprint did not pay its back rent—which Sprint contends amounts to an additional contractual term—or file a preliminary injunction motion. Instead, Mr. Hartkopf offered Sprint time within the extended cure period to justify its use of space that he believed exceeded the Site Agreement's allocation. (Dkt. No. 104-2 at 3.)

\* \* \*

For the reasons set forth above, reading the factual record in the light most favorable to Sprint, *see Tolan*, 572 U.S. at 657, no reasonable trier of fact could find that Mr. Hartkopf provided Sprint with a "clear, positive, unequivocal refusal to perform[,]" *Taylor*, 15 Cal. 3d at 137, and therefore repudiated the Site Agreement. As such, summary judgment in Mr. Hartkopf's favor on Sprint's breach of contract claim is appropriate.

Because no reasonable trier of fact could find that Mr. Hartkopf repudiated the Site Agreement, the Court need not determine whether Mr. Hartkopf retracted any alleged repudiation or if Sprint is entitled to damages on its breach of contract claim. *See Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014) ("To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for

---

[3] The remaining cases Sprint cites are distinguishable for substantially similar reasons. *See, e.g.*, *Taylor v. Johnston*, 15 Cal. 3d 130, 141 (1975) ("We conclude that as a matter of law this conduct did not amount to *an unequivocal refusal to perform* and therefore did not constitute an anticipatory breach of the contract[.]") (emphasis added); *Ferguson v. City of Cathedral City*, 197 Cal. App. 4th 1161, 1169 (2011) ("Even if Sergi's statement was based on Ferguson's misinterpretation of the City's actions, the language used in Sergi's letter was an unequivocal repudiation of the separation agreement" where "Sergi *unambiguously* stated the separation agreement was '*null and void*.'") (emphasis added); *Atkinson v. Dist. Bond Co.*, 5 Cal. App. 2d 738, 744 (1935) (finding a party breached its agreement where there was a "distinct, unequivocal, and absolute refusal to perform"); *Reg'l Enterprises Inc. v. Tchrs. Ins. & Annuity Ass'n of Am.*, 352 F.2d 768, 775 (9th Cir. 1965) (determining that documents containing no "positive statement that [a party] will not or cannot substantially perform [its] contractual duties" did not constitute evidence of an anticipatory breach) (internal quotation marks omitted).

nonperformance, (3) *the defendant's breach*, and (4) the resulting damage to the plaintiff.") (citation omitted) (emphasis added). Furthermore, as Mr. Hartkopf did not repudiate and therefore did not breach, there is nothing for the Court to order Mr. Hartkopf to specifically perform. *See Real Est. Analytics, LLC v. Vallas*, 160 Cal. App. 4th 463, 472 (2008) (determining that specific performance is an available remedy after a breach of contract).

Sprint also argues that Mr. Hartkopf breached its quiet possession of the PCS Site. The only evidence Sprint offers in support of this argument is Mr. Hartkopf's "threat" to cut off the utilities and his Notice of Default. While it is not fatal to a quiet possession claim that a tenant has "not vacated" its premises, *see Salisbury v. Hickman*, 974 F. Supp. 2d 1282, 1295 (E.D. Cal. 2013), nothing in the record shows that Mr. Hartkopf's conduct was "an unjustified and unauthorized interference with [Sprint's] profitable use of the leased property," *Guntert v. City of Stockton*, 55 Cal. App. 3d 131, 141 (1976). As Mr. Hartkopf argues—and the factual record indisputably demonstrates—he has continued to perform under the Site Agreement. Therefore, no reasonable trier of fact could find that Mr. Hartkopf's conduct constituted a breach of Sprint's quiet possession of the PCS Site.

### B. Implied Covenant of Good Faith and Fair Dealing

Mr. Hartkopf moves for summary judgment on Sprint's claim for breach of the implied covenant of good faith and fair dealing. According to Mr. Hartkopf, Sprint's implied covenant claim is duplicative of its breach of contract claim, and he did not breach the Site Agreement or thwart the parties' performance under the Agreement.

"Every contract imposes on each party a duty of good faith and fair dealing in each performance and in its enforcement[,]" and the burden imposed is "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Carson v. Mercury Ins. Co.*, 210 Cal. App. 4th 409, 429 (2012) (internal quotation marks and citations omitted). "In sum, the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995), *as modified on denial of reh'g* (Oct. 26, 1995) (citation omitted). "If the allegations do not go

11

beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990), *as modified on denial of reh'g* (Oct. 31, 2001).

Sprint's breach of contract claim is based on factual allegations concerning Mr. Hartkopf's demand for back rent and threats to interfere with Sprint's "operations and reasonable use" of the PCS Site. (Dkt. No. 84 at 12 ¶ 81.) Its breach of the implied covenant of good faith and fair dealing claim is based on Mr. Hartkopf's allegedly "unfair[] interfer[ence]" with its rights to receive the benefits of the Site Agreement by "threatening to turn off Sprint's access to the utilities without substantial justification." (*Id.* at 13 ¶ 90.) At bottom, Sprint's claim for breach of the implied covenant of good faith and fair dealing does not "go beyond the statement of a mere contract breach[.]" *Careau*, 222 Cal. App. 3d at 1395. Furthermore, the claims seek identical damages "as a result of [Mr. Hartkopf's] breaches or anticipatory breaches of the Site Agreement." (*Id.* at 12-13 ¶ 83, 92.) *See Careau*, 222 Cal. App. 3d at 1395. Sprint's attempt to limit *Careau* to insurance bad faith is unpersuasive. *Careau* did not limit its application to insurance disputes, and courts have applied *Careau* in other contexts. *See Bionghi v. Metro. Water Dist. of So. California*, 70 Cal. App. 4th 1358, 1370 (1999) (determining that summary adjudication on claim for breach of the implied covenant of good faith and fair dealing was appropriate where it was duplicative of a breach of contract claim concerning a consultant contract) (citing *Careau*, 222 Cal. App. 3d at 1395)); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 611 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc. v. Davis*, No. 20-727, 2021 WL 1072289 (U.S. Mar. 22, 2021) ("[A]s pleaded, the [implied covenant] allegations did not go beyond the breach of contract theories asserted by Plaintiffs and were thus properly dismissed.") (citing *Careau*, 222 Cal. App. 3d at 1395).[4] And Sprint posits no reason why *Careau*'s reasoning should not apply in this

---

[4] Sprint additionally cites *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *48 (N.D. Cal. Aug. 30, 2017), in support of the proposition that beyond the insurance context analyses of implied covenant claims turn on a defendant's interference of a plaintiff's rights to receive a contract's benefits. *In re Yahoo!* analyzed the

context. As such, the implied covenant claim may be disregarded as superfluous.

Sprint further argues that Mr. Hartkopf breached the implied covenant by "unfairly interfering" with Sprint's rights to receive the benefit of the Site Agreement and operate the PCS Site. (Dkt. No. 94 at 21.) As with Mr. Hartkopf's alleged repudiation of the Site Agreement, there is zero evidence in the factual record from which a reasonable trier of fact could find that Mr. Hartkopf "conscious[ly] and deliberate[ly] . . . frustrate[d] the agreed common purposes" of the Site Agreement when he "threatened" to cut power to the Site's utilities, or that he unfairly interfered with Sprint's rights to receive the Agreement's benefits. *Careau & Company*, 222 Cal. App. 3d at 1395; *see also In re Yahoo!* WL 3727318, at *48.

At bottom, no reasonable trier of fact could find that Mr. Hartkopf's conduct "involve[d] something beyond [conduct related to] breach of the contractual duty itself[.]" *Congleton v. Nat'l Union Fire Ins. Co.*, 189 Cal. App. 3d 51, 59 (1987). Sprint's implied covenant claim does not survive Mr. Hartkopf's summary judgment motion.

**C. Declaratory Judgment**

Sprint is entitled to summary judgment on its declaratory judgment claim because, for the reasons discussed *supra*, under Exhibit A to the Site Agreement's plain and unambiguous terms Sprint is not in breach of the Site Agreement. The Site Agreement does not limit Sprint to 300 total square feet for all of its PCS Site components because "equipment" as used in Exhibit A's Site Description does not include Sprint's antennas, cables or utility runs. As such, Mr. Hartkopf's attempts to hold Sprint in default of the Site Agreement are invalid because they are not in breach of the Agreement. Moreover, because the Site Agreement does not limit Sprint to 300 total square feet, Sprint does not owe Mr. Hartkopf any "back rent."

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Mr. Hartkopf's summary judgment

---

substance of its plaintiffs' claim for breach of the implied covenant of good faith and fair dealing—it did not address or concern whether the claim was superfluous to a breach of contract claim, and the cases cited *supra* show that duplicative implied covenant claims are properly disregarded even in non-insurance contexts. *See Bionghi*, 70 Cal. App. 4th at 1370; *In re Facebook*, 956 F.3d at 611.

motion regarding Sprint's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and specific performance. The Court GRANTS Sprint's summary judgment motion as to Mr. Hartkopf's claims for unjust enrichment, breach of contract and breach of the implied covenant of good faith and fair dealing. However, to the extent Mr. Hartkopf believes he did not have notice of the grounds for judgment of the contract claims, he may file a supplemental memorandum not to exceed 5 pages on or before May 14, 2021. This Order disposes with the parties' declaratory judgment claims.

This Order disposes of Dkt. Nos. 94 & 95.

**IT IS SO ORDERED.**

Dated: May 7, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge